IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **TERRANCE D. BECTON,** § | | |
| § | | |
| Plaintiff, § | | Civil No. 4:23-cv-393 |
| § | | **JURY DEMAND** |
| v. § | | |
| § | | |
| **C.H. ROBINSON COMPANY INC.,** § | | |
| **C.H. ROBINSON WORLDWIDE, INC.,** § | | |
| **LEADER EXPRESS LLC,** § | | |
| **NP EXPRESS, LLC and** § | | |
| **LOUIS A. ZEISLER,** § | | |
| § | | |
| Defendants. § | | |

## COMPLAINT AND JURY DEMAND

Terrance D. Becton, through his attorneys, files the following Complaint:

## JURISDICTION, VENUE, PARTIES

1. This Court has subject matter jurisdiction over Plaintiff's claims and causes of action under 28 U.S.C. § 1332(a)(1) and (3). This civil action is an action for damages involving a matter in controversy in excess of $75,000.00, exclusive of costs and interest and is between citizens of different states. No Plaintiff is a citizen of or domiciled in the same state as any defendant or individual member of entities organized as limited liability companies. Complete diversity of citizenship exists.

2. Venue is properly conferred on this Court because the tractor-trailer collision occurred in Hopkins County, Texas, which is in this judicial district. This court has jurisdiction over the parties. Many of the acts complained of occurred in this District,

including, but not limited to, the operation of the tractor-trailer involved in the crash involving the agents and/or employees of the defendants.

3. Terrance D. Becton is a domiciliary and citizen of the State of Tennessee, residing in Mason, Tipton County, Tennessee.

4. On information and belief, defendant C.H. Robinson Company Inc. ("Robinson Company") is registered with the Federal Motor Carrier Safety Administration as a property broker under USDOT number 2226453 and MC-384859. Robinson Company is a corporation and business entity organized and existing under the laws of Minnesota with its principal place of business located in Eden Prairie, Minnesota. Robinson Company may be served process by serving its BOC-3 [49 C.F.R. § 366] agent for service of process, Truck Process Agents of America, Inc., whose designated agent in Texas is International Border Trucking Compliance Service Inc., at 1519 Wyoming Ave., El Paso, Texas, 79902.

5. On information and belief, defendant C.H. Robinson Worldwide, Inc. ("Robinson Worldwide") is corporation and business entity organized and existing under the laws of Delaware with its principal place of business in Eden Prairie, Minnesota. Defendant Robinson Worldwide may be served with process by serving its BOC-3 [49 C.F.R. § 366] agent for service of process, Truck Process Agents of America, Inc., whose designated agent in Texas is International Border Trucking Compliance Service Inc., at 1519 Wyoming Ave., El Paso, Texas, 79902.

6. For ease of reference, Robinson Company and Robinson Worldwide may collectively be called the "Robinson Worldwide Defendants" and these references

include all agents, employees or others acting on the Robinson Worldwide Defendants' behalf for which the Robinson Worldwide Defendants are liable under agency/*respondeat superior*/master-servant/joint-venture/enterprise and other legal or equitable doctrines.

7. On information and belief, defendant Leader Express LLP ("Leader Express") is registered with the Federal Motor Carrier Safety Administration with a USDOT number of 3083940 and MC number MC-68294. Leader Express is a business entity organized as a Kentucky Limited Liability Company and existing under the laws of the Commonwealth of Kentucky and has a principal place of business in Bowling Green, Kentucky. On information and belief, every individual member of Leader Express is domiciled in and is a citizen of the Commonwealth of Kentucky. Leader Express may be served process by serving its BOC-3 [49 C.F.R. § 366] agent for service of process, #1 A+ Agents of Process, Inc., whose designated agent in the state of Texas is John C. Sims, 1205 Broadway, Lubbock, TX 79408.

8. On information and belief, defendant NP Express LLC ("NP Express") is registered as a motor carrier with the Federal Motor Carrier Safety Administration under USDOT number 2390272 and MC number MC-821577. NP Express is a business entity organized as a Kentucky Limited Liability Company with its principal place of business in Bowling Green, Kentucky. On information and belief, every individual member of Leader Express is domiciled in and a citizen of the commonwealth of Kentucky. NP Express may be served process by serving its BOC-3 [49 C.F.R. § 366] agent for service of process, Transportation Authority, LLC, whose

designated agent in Texas is Workplace Compliance and Solutions Inc., 213 Park Avenue, Hereford, TX 79045.

9. For ease of reference, Leader Express and NP Express may collectively be called the "Leader Express Defendants" and these references include all agents, employees or others acting on the Leader Express Defendants' behalf for which the Leader Express Defendants are liable under agency/*respondeat superior*/master-servant/joint-venture/enterprise and other legal or equitable doctrines.

10. On information and belief, Leader Express did business as NP Express and these entities were set up as "chameleon carriers" and were intended to operate if under different names, depending on whether one entity received too many safety violations or, otherwise, lost operating authority.

11. Defendant Louis A. Zeisler (or "Defendant Zeisler"), on information and belief, is a citizen and resides in Bowling Green, Warren County, Kentucky, and may be served with process by serving him or an agent at 1137 Cabell Drive, Bowling Green, Kentucky 42104.

## FACTS

### The Robinson Worldwide Defendants' Operations

12. Robinson Worldwide, in public SEC filings like the 2021 10-K Annual Report to Shareholders, holds itself out as "one of the largest global logistics companies in the world" that provides "freight transportation services" to companies of all sizes in a wide variety of industries. In doing so, Robinson Worldwide utilizes approximately 85,000 contracted transportation companies around the world, including contracted

4

motor carriers that the Robinson Worldwide Defendants select, hire and use to transport cargo.

13. Robinson Worldwide derives its profit from the difference between the charge to customers less the cost paid to the contracted transportation companies to transport freight.

### The Arrangement to Transport the Cargo

14. Before March 23rd, 2022, the Robinson Worldwide Defendants entered an arrangement to transport cargo consisting of 30,000 pounds of bread on 26 pallets from the shipper, TN Bun Company. The shipper, TN Bun Company, is located at 197 Printwood Drive, Dickson, Tennessee 37055-3011. The cargo was to be transported to the receiver, Campbell Soup DFW Ctr (DHL) at 3000 Cantrell Sansom Road, Fort Worth, Texas 76131.

15. Operating a tractor-trailer of the size and weight of the load involved in this collision involves a risk of physical harm to others unless it is skillfully and carefully done.

16. The Robinson Worldwide Defendants selected and entered an arrangement with Leader Express LLC and/or the Leader Express Defendants and their agents or employees to transport the cargo by tractor-trailer to Texas.

### The Leader Defendants' Safety and Fitness to Transport Cargo

17. According to publicly available websites including the Safety and Fitness Electronic Records (SAFER) System (www.safer.fmcsa.gov) that offers company safety data and related services to industry and the public over the internet, data

shows Leader Express had an out of service percentage for its vehicles of 45.5%, which is more than twice the national average and means that nearly 5 of every 10 Leader Express vehicles inspected on roadways were deemed unfit to be on roadways. Likewise, for driver out of service percentages, 10% of its drivers – nearly twice the national average – were deemed unfit to be on roadways. Leader Express had numerous recorded safety violations for unsafe equipment and driving, which were available for public view on SAFER and through other sources on or before March 23rd, 2022.

18. Leader Express was "unrated" by the Federal Motor Carrier Safety Administration, which means it had never undergone nor passed a formal safety audit to determine whether it had in place adequate safety management systems to reduce the risks associated with unsafe driving. This fact was also visible to the public on SAFER and other sources through a basic internet search.

19. According to SAFER, data shows NP Express had a "conditional" rating as of November 22nd, 2021 (which means a motor carrier does not have adequate safety management controls in place to ensure compliance with the safety fitness standard that could result in occurrences listed in 49 C.F.R. § 385.5(a) – (k)). NP Express

20. had an out of service percentage for vehicles of 53.3%, which is more than twice the national average and means that nearly 5 of every 10 NP Express vehicles inspected on roadways were deemed unfit to the on the roadways. Likewise for driver out of service percentages, 24.1% of its drivers – nearly four times the national average – were deemed unfit to be on roadways. Leader Express had numerous

recorded violations for unsafe equipment and driving, all of which also were available for public view on or before March 23rd, 2022.

### The Robinson Worldwide Defendants' Selection Criteria for High Value and Non-High Value Cargo

21. The Robinson Worldwide Defendants have specific criteria and perform due diligence on selecting and hiring motor carriers for "high value" (expensive) cargo. This process includes a rating system the Robinson Worldwide Defendants are to use whenever selecting motor carriers to transport high value loads and utilized a higher degree of due diligence to protect the high value cargo.

22. However, for non-high value loads, the Robinson Worldwide Defendants chose not to employ additional due diligence when selecting and hiring motor carriers to transport low value or inexpensive cargo, like bread.

23. The bread cargo that was to be hauled by the Leader Express Defendants from Tennessee to Texas was inexpensive, non-high value cargo. Because the cargo was inexpensive and, per the Robinson Worldwide Defendants' policy, the Robinson Worldwide Defendants did not perform any additional due diligence when selecting and hiring the Leader Express Defendants.

24. Had the Robinson Worldwide Defendants chose to employ the same due diligence in the selection and hiring of the Leader Express Defendants, the Leader Express Defendants most likely would not have met the selection criteria and would have been disqualified to haul high-value cargo because of poor safety histories and past safety violations.

25. The Robinson Defendants relied almost exclusively on the fact that the Leader Express Defendants had obtained operating authority from the Federal Motor Carrier Safety Administration, even though Leader Express had never undergone a safety audit by the government agency at that time and were "unrated" as shown on their company snapshot available on SAFER.

26. The Robinson Worldwide Defendants do not consider the risk of harm to the motoring public when using the selection criteria for non-high value loads, despite having been on notice for years of increased risks of harm to the motoring public associated with choosing not to perform additional due diligence beyond verifying operating authority.

27. The Robinson Worldwide Defendants knew, or in the exercise of reasonable care, should have known the Leader Express Defendants and the NP Express Defendants were operating as chameleon carriers and this fact would have presented a red flag that these Defendants were unfit to hire.

### The Robinson Worldwide Defendants' Right to Control the Leader Express Defendants

28. Through the arrangement with the Leader Express Defendants, the Robinson Worldwide Defendants retains the right to control – regardless of whether they exercise that right – the following: (1) the method of payment, all money and payments; (2) the Robinson Worldwide Defendants prohibit the Leader Express Defendants from billing or contacting the customer for payment; (3) the Robinson Worldwide Defendants retain the exclusive right to resolve payment disputes on behalf of the Leader Express Defendants; (4) the Leader Express Defendants must

purchase insurance naming the Robinson Worldwide Defendants as additional insureds; (5) the Leader Defendants must not sub-contract, broker, or tender any freight under the arrangement with the Robinson Defendants to any third party; (6) the Robinson Defendants may terminate the relationship with the Leader Express Defendants in their sole discretion; (7) the Robinson Defendants require automated shipment check-in and in-transit updates from one of the approved shipment status technologies (e.g., Navisphere); (8) the Leader Express Defendants must dedicate the tractor-trailer to the "exclusive use" of the Robinson Worldwide Defendants while transporting the cargo, or the pay can be forfeited; (9) the Robinson Worldwide Defendants reserve the right to deny cash advances to the Leader Express Defendants; (10) the Robison Worldwide Defendants purchase the fuel for the transport of the cargo; (11) the Robinson Worldwide Defendants require on-time delivery with all written and oral requirements to be met and, otherwise the pay can be reduced or denied, as well as future business cancelled; (12) the Robinson Worldwide Defendants require a minimum of a daily check-in call by 10:00 a.m.; (13) the Robinson Worldwide Defendants require the Leader Express Defendants to provide electronic shipment status updates via Electronic Data Interchange (EDI), NavisphereCarrier, the Navisphere driver app, or other similar software apps; (14) the Robinson Worldwide Defendants require the Leader Express Defendants to inform of the arrival and departure at the shipper within 30 minutes of the arrival and departure; (15) the Robinson Worldwide Defendants require the Leader Express Defendants to call the C.H. Robinson phone number for any problems or issues after

regular business hours; and (16) the Robinson Defendants require the Leader Express Defendants not to transport any cargo on the booking using a vehicle or equipment that is not listed as scheduled on the insurance policy.

### The Crash

29. Operating to transport the bread cargo from Tennessee to Texas, on or about March 23, 2022, around 1:40 pm, Defendant Louis A. Zeisler was operating a semi-tractor trailer at interstate speed westbound on Interstate 30 near reference marker 117 while in the course and scope of his employment, agency, or contract with one or more of the Defendants including the Leader Express Defendants and as agent/servant of the Robinson Worldwide Defendants.

30. The tractor-trailer operated by Defendant Zeisler was a 2013 Volvo VIN 4V4NC9EH5DN14478_(last digit illegible) pulling a trailer loaded with the bread cargo, described above.

31. Before that time, Terrance Becton had pulled the truck he was driving fully into the hazard lane on Interstate 30 near reference marker 117 to check a tire.

32. The truck operated by Terrance Becton was a 2014 Volvo VIN 4V4NC9EH8EN1683_(last number illegible).

33. The truck Terrance Becton had been driving was visible to any oncoming motorist, keeping a proper lookout.

34. The tractor-trailer operated by Defendant Zeisler veered into the emergency lane and slammed into the rear of the trailer while Terrance Becton was outside the truck.

35. The force of the impact of the tractor trailer pushed Terrance Becton underneath the parked tractor and the trucks burst into flames. Terrance Becton was dragged underneath the parked tractor and suffered severe burns and fractures to his legs and lower extremities.

36. As a result of the crash, Terrance Becton was hospitalized for an extended time and he has suffered permanent injuries and damages set forth more fully below.

## FIRST CAUSE OF ACTION

*Vicarious Liability of the Robinson Worldwide Defendants*

37. All allegations and causes of action in this Complaint, pled above and below, are incorporated into this cause of action by reference.

38. At all relevant times, the Robinson Worldwide Defendants selected one or more of the other Defendants to transport the load on the tractor-trailer at the time of this collision.

39. At all relevant times, one or more of the other Defendants were each the employee, agent, servant, or independent contractor of the Robinson Worldwide Defendants and operating in the course and scope of this employment.

40. The Robinson Worldwide Defendants retained the right to exercise control over these other Defendants in connection with this load.

41. The Robinson Worldwide Defendants undertook the non-delegable duty to provide reasonable transport of this load and breached this duty.

42. Without regard to agency or employment relationship, the Robinson Worldwide Defendants were authorized to transport the load and assumed

responsibility for the load. Accordingly, the Robinson Worldwide Defendants are one of the motor carriers for the load and responsible for the acts of these Defendants by operation of law. 49 C.F.R. 376.12; 49 U.S.C. 14102(a); 49 C.F.R. 390.05.

## SECOND CAUSE OF ACTION

*Negligence of the Robinson Worldwide Defendants*

43. All allegations and causes of action in this Complaint, pled above and below, are incorporated into this cause of action by reference.

44. The Robinson Worldwide Defendants are regularly engaged in the business of transportation and logistics.

45. The Robinson Worldwide Defendants had duties to select a competent contractor to transport this load. The Robinson Worldwide Defendants breached these duties by retaining incompetent, unfit or inexperienced contractors or sub-haulers to arrange and/or take this load.

46. The Robinson Worldwide Defendants knew or should have known of the particular incompetence because and there were red flags about the other Defendants, including that the Leader Express Defendants have a history of safety violations; they have been cited numerous times for safety violations; and their percentage of out of service violations are nearly twice or more than that of the national averages.

47. The incompetence, lack of fitness or inexperience of the other Defendants, as well as the negligence of the Robinson Worldwide Defendants, were a direct and

proximate cause of this collision and the injuries and damages to Terrance Becton, that are set forth more fully below.

### THIRD CAUSE OF ACTION

*Vicarious Liability of the Leader Express Defendants*

48. All allegations and causes of action in this Complaint, pled above and below, are incorporated into this cause of action by reference.

49. At all relevant times, Defendant Louis Zeisler was the employee, agent, servant, or independent contractor for the Leader Express Defendants and operating in the course and scope of his employment. The Leader Express Defendants are vicariously liable for the acts of Defendant Louis Zeisler with respect to this collision.

50. The Leader Express Defendants had the right to exercise control of Defendant Louis Zeisler's work in connection with the load and/or direct the manner in which the details of work were executed.

51. The Leader Express Defendants undertook the non-delegable duty to provide reasonably safe and competent transport of this load and breached this duty.

52. Without regard to employment or agency relationships, the Leader Express Defendants are interstate motor carriers and the owner of the tractor-trailer involved in this collision. Defendant Leader Express and/or Defendant NP Express, therefore, are responsible for the acts of Defendant Louis Zeisler as a matter of law.

53. The negligence, acts and omissions of Defendant Zeisler (for which the Leader Express Defendants are liable) are a direct and proximate cause of Terrance Becton's injuries and damages, as set forth more fully herein.

## FOURTH CAUSE OF ACTION

*Negligence of Defendant Leader Express and Defendant NP Express*

54. All allegations and causes of action in this Complaint, pled above and below, are incorporated into this cause of action by reference.

55. The Leader Express Defendants had duties to act reasonably in hiring, instructing, training, supervising and retaining their drivers and other employees and agents, including Defendant Louis Zeisler; promulgate and enforce policies, procedures, and rules to ensure that their drivers and vehicles were reasonably safe; and exercise reasonable care in entrusting their vehicles and equipment to responsible, competent and qualified drivers.

56. Defendant Leader Express and Defendant NP Express breached these duties by, among other things, selecting a driver who was unfit to operate a commercial motor vehicle and for failing to properly train drivers to keep a proper lookout, stay alert on the road and drive reasonably and safely.

57. The Leader Express Defendant's negligence was a direct and proximate cause of Terrance Becton's injuries and all of the damages set forth herein.

## FIFTH CAUSE OF ACTION

*Negligence of Louis A. Zeisler*

58. All allegations and causes of action in this Complaint, pled above and below, are incorporated into this cause of action by reference.

59. On or about March 23, 2022, Defendant Louis A. Zeisler was operating a semi-tractor trailer westbound on Interstate 30 while in the course and scope of his employment, agency, or contract with one or more of the Defendants.

60. Defendant Louis Zeisler had a duty to drive in a safe and reasonable matter and obey all traffic and other commercial motor vehicle safety laws while operating the semi-tractor trailer.

61. Defendant Louis Zeisler breached these duties when he, among other things, failed to drive in a single lane, failed to keep a proper lookout, failed to use skill and/or attentiveness to keep the semi-tractor trailer on the road and drove off the road into the hazard lane and across the fog line to the area where Terrance Becton had stopped, slamming the tractor-trailer he was driving into the rear of the trailer that was stopped in the emergency lane.

62. Mr. Becton became lodged under the trailer, could not feel his legs, and had to drag himself toward a ditch away from the wrecked semi-tractor trailer.

63. As a result of this collision, Mr. Becton had to be air-lifted from the scene of the crash and sustained severe and permanent injuries.

64. Defendant Louis Zeisler failed to use reasonable care under the circumstances, failed to maintain control of his tractor-trailer within the proper lane of travel, failed to keep an assured clear distance, failed to keep a proper lookout and otherwise failed to use reasonable care under the circumstances.

65. Defendant Louis Zeisler's negligence was a legal and proximate cause of Terrance Becton's injuries along with the other negligence described herein.

## SIXTH CAUSE OF ACTION

*Joint Enterprise/Venture – Liability of All Defendants*

66.     All allegations and causes of action in this Complaint, pled above and below, are incorporated into this cause of action by reference.

67.     The events leading up to the crash involved: (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control.

**68.**     The Defendants are liable under the doctrine of joint venture/enterprise for all injuries and damages proximately caused by the acts and/or omissions of the Defendants.

## DAMAGES

69.     All allegations and causes of action in this Complaint, pled above and below, are incorporated into this cause of action by reference.

70.     As a direct and proximate result of the Defendants' acts and omissions, Terrance Becton has suffered injuries and damages, as set forth herein. As a result of the crash, Terrance Becton suffered from and was diagnosed with the following physical injuries:

   a. Burns to his lower legs that later became necrotic;

   b. Left Grade III open tibia shaft fracture;

   c. Left comminuted, proximal fibula shaft fracture;

    d. Left Grade II open calcaneus fracture;

    e. Left syndesmosis injury;

    f. Right Grade III open tarsal metatarsal foot fracture/dislocation;

    g. Right open, base of 2nd, 3rd, 4th MT fractures with intra-articular extension;

    h. Right open tarsal navicular fracture;

    i. Right open lateral cuneiform fracture;

    j. Open wound to left leg;

    k. Open wounds to bilateral feet;

    l. Acute blood loss anemia;

    m. Open right calcaneal fracture with violation of joint space.

71. These injuries and damages necessitated a long hospitalization period, surgeries, treatments including skin grafts, and rehabilitation.

72. As a direct and proximate result of Defendants' negligence, acts and/or omissions, Terrance Becton is entitled to recover a judgment against these Defendants, jointly and severally, for all damages available at law or equity including, but not limited to damages for past and future medical bills, past and future lost earning capacity, past and future lost income, past and future mental anguish, past and future pain and suffering, past and future physical impairment, past and future disfigurement in an amount to be determined by the jury.

## **PUNITIVE/EXEMPLARY DAMAGES**

73. All allegations and causes of action in this Complaint, pled above and below, are incorporated into this cause of action by reference.

74.     The above-referenced acts and omissions of all the Defendants, when viewed objectively from the standpoint of the Defendants at the time of the occurrence, involved an extreme degree of risk, considering the probability and magnitude of potential harm to others, and were of such a nature that the Defendants had a subjective awareness of the risks involved, but nevertheless proceeded with conscious indifference to the rights, safety, and welfare of others, including but not limited to the Plaintiff, Terrance Becton. All of the Defendants should therefore be required to pay exemplary damages for which the Plaintiff now sues.

**WHEREFORE**, Plaintiff respectfully requests judgment in his favor and against all Defendants, jointly and severally, in amount to be determined by the jury that is just and fair and in excess of seventy-five thousand dollars ($75,000.00) (exclusive of costs and interest), in addition to punitive damages, costs, pre- and post-judgment interest, and other relief that this Honorable Court deems just under the circumstances.

Respectfully submitted,

*/s/ Bryan M. Meredith*
Bryan M. Meredith, TN No. 026876
Meredith Law Firm, PLLC
1715 Aaron Brenner Drive
Suite 450
Memphis, TN 38120
P: (901) 315-0232
F: (901) 410-3116
bryan@meredithlegal.com
*Attorney For the Plaintiff*

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all triable issues.

*/s/Bryan M. Meredith*
Bryan M. Meredith